# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Paul Ronny Barsness, | Civ. No. 20-0041 (PAM/BRT) |
| Petitioner, | |
| v. | |
| Paul Schnell, Commissioner of Minnesota Corrections; Catherine Johnson, Director; and Renee Louck, Probation Agent, Hennepin Department of Community Corrections, | **REPORT AND RECOMMENDATION** |
| Respondents. | |

---

Kent D. Marshall, Esq., Marshall Law Office, counsel for Petitioner.

Edwin William Stockmeyer, III, Esq., and Matthew Frank, Esq., Office of the Minnesota Attorney General; and Sarah C. Estep-Larson, Esq., Ottertail County Attorney's Office, counsel for Respondents.

---

BECKY R. THORSON, United States Magistrate Judge.

This matter comes before the undersigned United States Magistrate Judge pursuant to a referral for a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b) and Local Rule 72.1, and upon the Petition for Writ of Habeas Corpus of Paul Ronny Barsness. (Doc. No. 1, Habeas Pet.) The Court issued an Order to Show Cause why the writ should not be granted on January 8, 2020. (Doc. No. 4.) A Response was filed on March 12, 2020 (Doc. No. 13), and Petitioner filed a Reply on April 10, 2020 (Doc. No. 15).

For the reasons that follow, and based on the files, records, and proceedings herein, this Court recommends that the Petition be denied.[1]

## I. Background

### A. Criminal Trial

Petitioner was tried by a jury and convicted of second-degree sexual misconduct against A.N., the ten-year-old daughter of a co-worker. *State v. Barsness*, No. A13-2013, 2014 WL 5419726, at *1 (Minn. Ct. App. Oct. 27, 2014), *rev. denied* (Minn. Dec. 30, 2014) ("*Barsness I*"). In late 2011, Petitioner moved into the co-worker's home, staying in an upstairs room across from A.N. (*Id.*) Petitioner moved out in March 2012, and shortly thereafter a neighbor observed Petitioner at the house. (*Id.*) The neighbor saw Petitioner grab A.N.'s arm and take her inside. (*Id.*) Finding the behavior suspicious, the neighbor followed them into the house, whereupon A.N.'s stepfather came up from the basement and asked Petitioner to leave. (*Id.*) The neighbor told the stepfather that he was concerned about A.N. and would be contacting authorities, and that night A.N. disclosed to her stepfather that when Petitioner lived with them, he would touch her inappropriately. (*Id.*) The stepfather never reported those allegations, but the neighbor did contact the sheriff and child protective services with his concerns. (*Id.*)

A few days later, A.N. met with Fergus Falls Police Officer Kevin Sonstebo and a social worker. (*Id.*) Officer Sonstebo told A.N. they had received a neglect report, and A.N. then volunteered that Petitioner had touched her inappropriately, stating that she

---

[1]     Former Respondent Keith Ellison was dismissed from this action on August 3, 2020 for lack of personal jurisdiction. (*See* Doc. Nos. 16, 17.)

2

"[couldn't] take this anymore." (*Id.*) Officer Sonstebo then arranged for a CornerHouse interview, which was conducted by a Clay County social services worker later that same day. (*Id.*) Based on the results of that interview, the Otter Tail County Attorney charged Petitioner with first-degree criminal sexual conduct – sexual penetration or contact with a victim under 13 years old, and second-degree criminal sexual conduct – sexual contact with a victim under 13 years old. (*Id.*) The State did not give a *Spriegl* notice prior to trial. [2] (*Id.*)

At trial, A.N. testified that Petitioner touched her genitals with his hands under her clothes, carried her out of her bed into his room and repeatedly pushed his penis against her buttocks, and that once she tried to run away, but Petitioner grabbed her and would not let her go. (*Id.*) She further testified that after Petitioner returned to the house and spoke with her, she disclosed Petitioner's conduct to her stepfather. (*Id.*) She also testified as to meeting with Officer Sonstebo and doing the CornerHouse interview. (*Id.*)

A.N.'s mother testified that while she had never witnessed any inappropriate behavior between A.N. and Petitioner, she had been concerned about their "flirty" relationship and had considered asking Petitioner to leave in the past. (*Id.*) A.N.'s mother also testified that Petitioner returned to the house twice after moving out to bring her drugs. On the first occasion, Petitioner told A.N.'s mother, "I hope [A.N.] doesn't say

---

[2]    In Minnesota, "[e]vidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). This evidence, however, may be used for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* Such evidence is referred to in Minnesota as *Spreigl* evidence after *State v. Spreigl*, 139 N.W.2d 167 (Minn. 1965).

anything"; on the second occasion, Petitioner questioned A.N.'s believability. (*Id.*) A.N.'s mother also disclosed that she believed that Petitioner's girlfriend—who sometimes stayed at the house—was only sixteen years old. (*Id.* at *2.)

A.N.'s stepfather testified that on the day Petitioner returned to the house, the stepfather asked Petitioner to leave, the neighbor informed the stepfather he was calling the authorities about A.N., and A.N. informed him that Petitioner used to carry her into his room at night and touch her. (*Id.*) Like A.N.'s mother, the stepfather testified that he had been uncomfortable with Petitioner's interactions with A.N., and that he believed that Petitioner's girlfriend was sixteen years old. (*Id.*)

Officer Sonstebo and the social services worker who conducted the CornerHouse interview also testified regarding their involvement in the case. (*Id.*) The social worker explained CornerHouse interviews, discussed A.N.'s interview, and a video of that interview was played for the jury. (*Id.*)

Petitioner testified in his own defense, denying touching A.N. inappropriately. On cross-examination, the state asked Petitioner if he was aware of an investigation into his relationship with his then-girlfriend, including the allegation that Petitioner was providing methamphetamine to the girlfriend in exchange for sex. (*Id.*) Petitioner stated he was not aware. (*Id.*)

The jury convicted Petitioner of second-degree sexual misconduct, but acquitted him on the more serious charge of first-degree criminal sexual conduct. (*Id.*)

### B. Direct Appeal

Petitioner appealed his conviction on October 24, 2013, alleging prosecutorial misconduct and ineffective assistance of counsel. With regard to the former claim, Petitioner alleged that the prosecutor committed misconduct when he elicited character evidence in the form of the girlfriend's age, (2) improperly shifted the burden of proof during closing argument, and (3) elicited *Spreigl* evidence without previously providing notice by asking Petitioner about exchanging methamphetamine for sex with his girlfriend. *Barsness I*, 2014 WL 5419726, at \*2. The Court of Appeals rejected those arguments on three, independent grounds.

Petitioner also argued in a pro se brief that he was denied effective assistance of trial counsel because his counsel (1) failed to object to the instances of alleged prosecutorial misconduct; (2) was difficult to communicate with; and (3) failed to present certain evidence and call witnesses in his defense. *Id.* at \*7. The court, having already concluded that Petitioner's rights were not affected by the prosecutor's conduct, rejected the first argument. *Id.* It then concluded that a postconviction hearing was necessary to allow proper appellate review of the other claims as the record before it was insufficient. *Id.* (citing *Voorhees v. State*, 627 N.W.2d 642, 649 (Minn. 2001)).

The Minnesota Court of Appeals affirmed Petitioner's conviction on October 27, 2014, and the Minnesota Supreme Court denied review on December 30, 2014.

### C. First Post-Conviction Appeal

On January 4, 2016, Petitioner filed his first Petition for Writ of Habeas Corpus, which was dismissed without prejudice on February 29, 2016. *See Barsness v. Dooley*,

5

No. 0:16-CV-00001, Doc. No. 13 (D. Minn. March 1, 2016). On February 19, 2016, while that action was still pending, Petitioner filed his first pro se petition for post-conviction relief in state court, arguing that his conviction was tainted by prosecutorial misconduct, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel. He also sought to compel disclosure of additional discovery. That petition was denied without hearing by the post-conviction court on June 8, 2016. *See Barsness v. State*, No. A16-1302, 2017 WL 1842835, at *1 (Minn. Ct. App. May 8, 2017), *rev. denied* (Minn. July 18, 2017) ("*Barsness II*"). Petitioner appealed, and on May 8, 2017, the Minnesota Court of Appeals affirmed the lower court's decision. *Id.* The Court of Appeals concluded that Petitioner's prosecutorial misconduct claims were known or should have been known on direct appeal and were thus *Knaffla*-barred, and that Petitioner's ineffective assistance of trial and appellate counsel claims failed on the merits. *Id.* at *2–3. As to Petitioner's motion to compel discovery, the Court of Appeals affirmed the lower court's denial, agreeing that Petitioner had failed to show his request was anything more than a "fishing expedition" for evidence that might impeach witness testimony. *Id.* at *4. The Minnesota Supreme Court subsequently denied review on June 8, 2017.

### D. Second Post-Conviction Appeal

Petitioner filed a second petition for post-conviction relief through counsel on January 10, 2018, again arguing prosecutorial misconduct and ineffective assistance of counsel. He also argued, for the first time, "actual innocence" based on a newly obtained affidavit from N.T., a social worker, which Petitioner asserts is evidence that Officer

6

Sonstebo perjured himself at trial. *Barsness v. State*, No. A18-1227, 2019 WL 2495511, at *1 (Minn. Ct. App. June 17, 2019) ("*Barsness III*"). The second petition for post-conviction relief was denied without hearing by the District Court on June 1, 2018. *Id.* The Minnesota Court of Appeals affirmed that decision on June 17, 2019, reasoning that Petitioner's prosecutorial misconduct and ineffective assistance of counsel claims were *Knaffla*-barred, and that his "actual innocence" claim failed because the affidavit underlying that claim does not speak to Petitioner's actual innocence of the crime for which he was convicted. *Id.* at *2–3. The Minnesota Supreme Court denied review on September 17, 2019, and on January 6, 2020, Petitioner filed the present Petition.

## II. Analysis

In his Petition, Petitioner argues that his due process rights were violated by alleged prosecutorial misconduct and ineffective assistance of counsel. (*See* Doc. No. 1, Habeas Pet. 11–12.) He also argues actual innocence based on the affidavit of N.T. (*Id.* at 13.) Respondents maintain that the Petition should be denied because Petitioner procedurally defaulted his claims by failing to properly present them to the state courts, and because Petitioner's claims have been resolved on adequate independent state grounds. (*See* Doc. No. 13, Mem. in Opp'n 7–12.) Petitioner also requests an evidentiary hearing to further explore his claims. (Doc. No. 15, Reply 16.) For the following reasons, this Court recommends that the Petition be denied, and no certificate of appealability be issued.

### A. Standard of Review Under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas relief will not be granted with respect to any claim adjudicated on the merits in state court proceedings unless such adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2); *Davis v. Grandlienard*, 828 F.3d 658, 664 (8th Cir. 2016). Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decide[d] a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the "unreasonable application" clause, the writ can be granted "if the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413.

"Clearly established Federal law" includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). An "unreasonable application" of those holdings "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Id.* (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)). To satisfy this high bar, a habeas petitioner is required to show that "the state court's ruling on the claim being presented in federal court was so lacking

in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "Adherence to these principles serves important interests of federalism and comity. AEDPA's requirements reflect a 'presumption that state courts know and follow the law.'" *Woods*, 135 S. Ct. at 1376 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). On collateral review of state court convictions, "federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong. Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington*, 562 U.S. at 102–03).

### B. Petitioner's Claims are Procedurally Defaulted and Lack Merit

Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies. 28 U.S.C. § 2254(b)(1)(A). This requirement gives the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.*; *see also O'Sullivan v. Boerckel*, 535 U.S. 838, 845 (1999). A petitioner meets the "fair presentation" requirement if the state court "rules on the merits of his claims, or if he presents his claims in a manner that entitles him to a ruling on the merits." *Gentry v. Lansdown*, 175 F.3d 1082, 1083 (8th Cir. 1999).

"If a prisoner has not presented his habeas claims to the state court, the claims are defaulted if a state procedural rule precludes him from raising the issues now." *Middleton v. Roper*, 455 F.3d 838, 855 (8th Cir. 2006). In other words, the exhaustion requirement is satisfied "if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law"; but "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (citing *Teague v. Lane*, 489 U.S. 288 (1989); *Wainright v. Sykes*, 433 U.S. 72 (1977)).

Under Minnesota law, one such procedural rule that results in procedural default is known as the *Knaffla* rule. In *Knaffla*, the Minnesota Supreme Court explained that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). This "longstanding procedural bar . . . prevents state prisoners from seeking postconviction relief based on claims that could have been raised on direct appeal, either because the prisoner knew or should have known of the claims at that time." *Vann v. Smith*, No. 13-cv-893 (SRN/JSM), 2015 WL 520565, at *6 (D. Minn. Feb. 9, 2015). Claims that were raised, or could have been raised, in a previous postconviction petition are also procedurally barred. *Colbert v. State*, 870 N.W.2d 616, 626 (Minn. 2015).

There are two exceptions to the *Knaffla* rule. First, "if a claim is known to the petitioner at the time of an appeal but is not raised, it will not be barred if its novelty was so great that its legal basis was not reasonably available when the direct appeal was taken." *Jackson v. Symmes*, Civil No. 09-2946 (SRN/JSM), 2011 WL 1300930, at *13 (D. Minn. Jan. 18, 2011), *report and recommendation adopted*, 2011 WL 1256617 (D. Minn. Apr. 4, 2017). Second, it will not be barred "if the claim's legal basis was not sufficiently available" and "fairness so requires the review and the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal." *Id.* (citing *Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006); *Powers v. State*, 731 N.W.2d 499, 502 (Minn. 2007)).

### i.    Prosecutorial Misconduct

Petitioner alleges seven instances of alleged prosecutorial misconduct that he believes denied him due process: (1) introduction of *Spriegl* evidence without prior notice; (2) offering false testimony; (3) failing to correct testimony of a material state witness; (4) introducing improper character evidence; (5) improperly shifting the burden in closing argument; (6) failure to disclose exculpatory evidence; and (7) engaging in improper interview techniques. Of these claims, only three were raised on direct appeal: (1) introduction of *Spriegl* evidence without prior notice; (2) introducing impermissible character evidence; and (3) improperly shifting the burden of proof in closing argument. (Habeas Pet. 12); *see Barsness I*, 2014 WL 5419726, at *2–6. The remainder were properly rejected by the post-conviction court and the Minnesota Court of Appeals in Petitioner's two post-conviction appeals as procedurally barred by *Knaffla* because they

11

were known, or should have been known, at the time of Petitioner's direct appeal. *See Barsness III*, 2019 WL 2495511, at *3; *Barsness II*, 2017 WL 1842835, at *2. Such claims are therefore procedurally defaulted.

A petitioner may surmount a procedural default by demonstrating either "cause for the default and actual prejudice as a result of the alleged violation of federal law" or that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Cause sufficient to excuse a procedural default refers to "some objective factor external" to the petitioner, "something that cannot fairly be attributed to him," which impeded his ability to comply with state procedural rules. *Id*. at 753 (quotation omitted). To satisfy the miscarriage-of-justice exception, a petitioner must make a credible showing of actual innocence, not mere legal innocence, through new and reliable evidence. *See Schlup v. Delo*, 513 U.S. 298, 321–24 (1995); *Anderson v. United States*, 25 F.3d 704, 707 (8th Cir. 1994).

Here, Petitioner asserts that his lack of legal training and knowledge explain his failure to raise the *Knaffla*-barred claims earlier. These, however, are not external factors that can serve as cause to excuse his failure to properly raise his claims in state court. *See Stanley v. Lockhart*, 941 F.2d 707, 710 (8th Cir. 1991) ("Stanley's pro se status and his limited educational background do not constitute sufficient cause to excuse his procedural default."); *Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir. 1988) (stating that "pro se status," limited "educational background," and "procedural ignorance" do not constitute cause for a procedural default). Petitioner also argues "actual innocence" as a

separate ground for relief but, as discussed in detail below, that argument also lacks merit.

As to Petitioner's three remaining claims that were raised on direct appeal, this Court concludes that the Minnesota Court of Appeals did not err in dismissing Petitioner's allegations of prosecutorial misconduct. Generally, federal habeas relief is not warranted on the grounds of prosecutorial misconduct unless the misconduct injected enough unfairness into the trial to render the conviction a denial of due process. *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002) (citation omitted). To meet this high bar, "improper remarks by a prosecutor must be 'so egregious that they fatally infect [ ] the proceedings and render[ ] [a defendant's] entire trial fundamentally unfair.'" *Id.* (citation omitted). A petitioner must demonstrate "'that absent the alleged impropriety the verdict probably would have been different.'" *Id.* (citation omitted). And with regard to statements made during a closing argument, habeas review is "exceptionally limited," and "relief should only be granted if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have sua sponte declared a mistrial." *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999).

This Court finds the Court of Appeals' application of the law to these claims reasonable. Petitioner's first claim is that by asking about Petitioner's girlfriend's age, the prosecutor improperly introduce *Spreigl* evidence. The Court of appeals disagreed, noting that the Petitioner had first asked A.N.'s mother and stepfather how often his girlfriend stayed overnight. *Barsness I*, 2014 WL 5419726, at *3. The court concluded that line of questioning was intended to demonstrate that Petitioner lacked the opportunity to commit

13

the crimes charged due to the presence of the girlfriend. *Id.* Thus, when the prosecutor inquired into the girlfriend's age on redirect, it was to establish that as a minor she still lived with her parents, and therefore was likely to spend time away from Petitioner, especially overnight. *Id.* Thus, because the question was not asked to show "action in conformity" with Petitioner's character, the court concluded it was not misconduct. *Id.*

Next, the court considered Petitioner's claim that the prosecutor improperly shifted the burden of proof in closing argument when he stated, "I don't care if there's a lot of doubt; it can be bits and pieces that don't necessarily fit in the puzzle, but you can still see that picture of the puzzle if there's three, four, five, six pieces missing when there's a hundred, or there's 50, or 25." *Id.* at *4. Reviewing the closing argument in its entirety, the court concluded that the prosecutor properly focused on the facts presented at trial, and did not commit misconduct with the puzzle metaphor. *Id.* Moreover, the court noted that the prosecutor properly stated the burden of proof in her argument, and the district court also informed the jury of the state's burden of proof and the proper definition of reasonable doubt. *Id.*

Finally, the court agreed with Petitioner that the prosecutor committed plain error when she asked Petitioner whether he was aware that a separate investigation was probing allegations that Petitioner was providing methamphetamine to his girlfriend in exchange for sex. *Id.* at *5. The court, however, then concluded that the error did not affect Petitioner's substantial rights because (1) the evidence against him was strong, (2) the error was a single isolated incident, and (3) the jury acquitted him of the more

serious charge. *Id.* (citing *State v. Fitzgerald*, 382 N.W.2d 892, 896 (Minn. Ct. App. 1986), *rev. denied* (Minn. Apr. 24, 1986)).

This Court concludes that the Court of Appeals' decision as to these three claims was reasonable and not contrary to federal law. *Harrington*, 562 U.S. at 102–103. Moreover, this Court concludes that none of the prosecutor's alleged misconduct during the trial rises to the level of prosecutorial misconduct constituting reversible error under Supreme Court precedent. *See, e.g.*, *Darden v. Wainright*, 477 U.S. 168, 180–81 (1986) (finding that the prosecutor's reference to the defendant as an "animal" during closing argument did not violate the defendant's due process rights); *Kellogg v. Skon*, 176 F.3d 447, 451–52 (8th Cir. 1999) (finding that the prosecutor's references to the defendant as a "monster," "sexual deviant," and "liar" did not render the trial fundamentally unfair). Consequently, Petitioner's three claims of prosecutorial misconduct that were raised on direct appeal were properly denied by the state courts.

## ii. Ineffective Assistance of Counsel

Petitioner next alleges that his trial counsel's conduct fell below the level of reasonable competence required of criminal defense attorneys in the State of Minnesota. (Habeas Pet. 11.) Specifically, Petitioner asserts that his counsel (1) failed to engage in a meaningful investigation into A.N.'s interviews and statements; (2) failed to call N.T. and an expert on falsely implanted memories and the risks of improper interview techniques to testify; (3) failed to effectively impeach and cross-examine witnesses; (4) failed to object to prosecutorial misconduct; and (5) failed to communicate with the Petitioner. (*Id.*) For the reasons that follow, these claims lack merit.

15

As a preliminary matter, this Court observes that to the extent these claims differ from the ineffective-assistance-of-counsel claims presented to the post-conviction court and Court of Appeals in *Barsness II*—where Petitioner had his first opportunity to raise them—they are *Knaffla*-barred and thus procedurally defaulted because they are based on information available in the trial record, and because Petitioner has failed to show that the exceptions to procedural default apply in his case.[3] *See Barsness II*, 2017 WL 1842835, at *3. And for the reasons that follow, this Court concludes that the Court of Appeals did not err in its decision regarding those claims that were fairly presented to it.

A successful ineffective-assistance-of-counsel claim generally requires two showings: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–90 (1984). Under the first prong, Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Paulson v. Newton Corr. Facility*, 773 F.3d 901, 904 (8th Cir. 2014) (citing *Strickland*, 466 U.S. at 694). Under the second prong, Petitioner "must show that there is a reasonable

---

[3]    The ineffective assistance of trial counsel claims exhausted in the state courts are as follows: Petitioner alleged that his trial counsel (1) failed to keep in contact with appellant; (2) raised his voice at appellant within earshot of the jury; (3) informed appellant that he would not continue to represent appellant after the conclusion of trial; (4) failed to call witnesses that could have relieved confusion in the proceedings; (5) failed to impeach the state's witnesses; (6) failed to interview a witness whose testimony would have been material; (7) failed to object to prosecutorial misconduct by wrongfully admitting *Spreigl* evidence at trial; (8) denied him access to the contents of his file, thereby impeding his ability to raise issues in his direct appeal; (9) failed to seek expert testimony to impeach the interviewing techniques used on A.N.; and (10) did not try to exclude A.N.'s testimony on the ground that it was tainted by the interviewing techniques.

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). "Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011). "This is a heavy burden." *Caban v. United States*, 281 F.3d 778, 781 (8th Cir. 2002). "In determining whether counsel's conduct was objectively reasonable, 'there is a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'" *Nguyen v. United States*, 114 F.3d 699, 704 (8th Cir. 1997) (quoting *Strickland*, 466 U.S. at 689).

Here, Petitioner cannot meet the second prong of *Strickland.* Petitioner has made no showing that there is a reasonable probability that, but for his trial counsel's allegedly unprofessional errors, the result of his trial would have been different. Instead, Petitioner focuses his argument on his belief that had the fact that Officer Sonstebo lied about N.T.'s presence at the investigatory interview come to light during the trial, it would have allowed the defense to "probe[ ] into the possibility of an alternative perpetrator, falsely implanted memories through improper interview techniques, and the impact that had on other fact witnesses." (Reply 13.) While such inquiries may indeed have had a "conceivable effect" on the trial, Petitioner's conjecture on this point is insufficient to meet his heavy burden of demonstrating that but for counsel's decision not to pursue this line of inquiry, the outcome of his trial would have been different. Accordingly, this Court concludes that Petitioner's claim for habeas relief due to ineffective assistance of counsel should be denied.

17

### iii.    The Affidavit and Actual Innocence

Finally, Petitioner asserts that he is factually innocent of the crime of which he was convicted. (Habeas Pet. 13.) Specifically, he cites the affidavit signed by N.T. as new evidence supporting his theory that because Officer Sonstebo lied about who was present at an interview with the victim, the CornerHouse interview, and indeed the entire trial, may have been compromised. Petitioner argues that he is entitled to habeas relief because the state courts erred in determining that his actual-innocence claim is *Knaffla*-barred. (Reply 15.) Petitioner believes that he is entitled to an evidentiary hearing because without one, he "cannot meet the high standard of proving factual innocence." (*Id.*) For the reasons that follow, this Court disagrees.

"Claims of 'actual innocence' are extremely rare and are based on 'factual innocence not mere legal insufficiency.'" *United States v. Lurie*, 207 F.3d 1075, 1077 n.4 (8th Cir. 2000) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Accordingly, in order to successfully invoke the actual-innocence exception to the procedural default rule, a petitioner must make a colorable showing of factual innocence, not mere legal innocence, through the presentation of new and reliable evidence. *See Schlup*, 513 U.S. at 321–24; *Anderson*, 25 F.3d at 707.

The Minnesota Court of Appeals rejected Petitioner's "actual innocence" claim as *Knaffla*-barred because it was known, or should have been known, at the time of his first post-conviction petition. In its opinion the court reasoned that,

> In his first petition for postconviction petition relief, Barsness argued that Officer Sonstebo "committed perjury while testifying when he claimed that only one interview was performed with himself and [the victim], and that

18

> [N.T.] was present during that interview." *Barsness II*, 2017 WL 1842835,
> at *2. This is essentially the same argument raised here.

*Barsness III*, 2019 WL 2495511, at *2. Critical to the Court of Appeal's decision was its

determination that the affidavit Petitioner presented in support of his "actual innocence"

claim does not, in fact, demonstrate that Petitioner is innocent of the crime for which he

was convicted. It calls into question Officer Sonstebo's testimony, but does not weaken

the remaining evidence presented by the State at trial. *Id.* For the reasons that follow, this

Court agrees.

Here, though styled as a claim of "actual innocence," in reality the only new

evidence Petitioner has presented to the Court is the affidavit he obtained from N.T.

Petitioner leverages that statement—which merely reiterates facts of which Petitioner had

long been aware, *see Barsness II*, 2017 WL 1842835, at *2; *Barsness III*, at *2 (*see* Pet.'s

App'x 24–25; 46–47)—to argue that Officer Sonstebo's false testimony about N.T.'s

presence at his investigatory interview somehow tainted the subsequent CornerHouse

interview (which was conducted by another social worker) itself, as well as all other

testimony from A.N., her mother, and her father. (Reply 9–10.) Petitioner's reliance on

N.T.'s statement to support such sweeping claims is, however, misplaced.

The actual-innocence exception to the procedural-default rule demands that a

petitioner make a colorable showing of factual innocence through the presentation of new

and reliable evidence. *See Schlup*, 513 U.S. at 321–24; *Anderson*, 25 F.3d at 707. Here,

Petitioner has failed to do so for two reasons. First, the statement from N.T., while itself

new, merely corroborates what both Petitioner and the state courts already knew

concerning Officer Sonstebo's false testimony. It contains no information, however, tending to demonstrate Petitioner's factual innocence of the crime for which he was convicted. Second, as the Minnesota Court of Appeals has repeatedly observed, the countervailing evidence of Petitioner's guilt, including A.N.'s in-person testimony corroborating the CornerHouse interview, A.N.'s parents' testimony that they were uncomfortable with Petitioner's relationship with A.N., and the neighbor's testimony that was suspicious of Petitioner's relationship with A.N., was strong. *See Barsness III*, 2019 WL 2495511, at *2 (citing *Barsness I*, 2014 WL 5419726 at *6).

Accordingly, this Court concludes that Petitioner's claim of "actual innocence" is *Knaffla*-barred because it could have been brought in his first state post-conviction petition. As a consequence, this Court recommends that Petitioner's "actual innocence" claim be denied as procedurally defaulted.

### iv.    Evidentiary Hearing

Finally, this Court turns to Petitioner's request that he be granted an evidentiary hearing to further explore his claims. (Reply 16.) The relevant statutory provision, 28 U.S.C. § 2254(e)(2) provides as follows:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

In other words, § 2254(e)(2) "generally bars evidentiary hearings in federal habeas proceedings initiated by state prisoners," but it "includes an exception for prisoners who present new evidence of their innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013).

Here, Petitioner has failed to meet the requirements of § 2254(e)(2) for two reasons. First, the only new evidence cited by Petitioner is the affidavit of N.T. As this Court has already explained above, that affidavit is not "new evidence" because it merely reiterates facts of which Petitioner was already aware. *See Barsness II*, 2017 WL 1842835, at *2; *Barsness III*, at *2; (*see* Pet.'s App'x 24–25; 46–47). And second, the affidavit does not speak to Petitioner's innocence of the crime for which he was committed. Instead, it concerns a secondary trial issue – Officer Sonstebo's credibility; but it does not weaken the remainder of the State's case, which was strong. Petitioner argues that an evidentiary hearing is necessary to allow him to develop the facts necessary to show his actual innocence (*see* Reply 16), but this is putting the cart before the horse. The statute requires that Petitioner show new evidence of his innocence *first*; only then will such a hearing be granted.

Accordingly, this Court recommends that Petitioner's request for an evidentiary hearing be denied.

## C. Certificate of Appealability

Before appealing a final ruling on a federal habeas petition, a state prisoner must be granted a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). The Court cannot grant such a certificate unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must show that the issues to be raised on appeal are "debatable among reasonable jurists," that different courts "could resolve the issues differently," or that the issues otherwise "deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994).

This Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Petitioner's claims any differently than recommended here. Petitioner has not identified, and this Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants appellate review. This Court therefore recommends that Petitioner not be granted a COA in this matter.

## III.    Conclusion

For the foregoing reasons, and based on the files, records, and proceedings herein, this Court recommends that the Petition for Writ of Habeas Corpus (Doc. No. 1) be denied and no certificate of appealability be granted.

### RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

1.    Petitioner's Petition for a writ of habeas corpus (Doc. No. 1) be **DENIED**;

2.    A certificate of appealability **NOT BE GRANTED**; and

3.      Judgment be entered accordingly.


Date: October 7, 2020.                    _s/ Becky R. Thorson_____
                                          BECKY R. THORSON
                                          United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).